A. R. Purdy Co., Inc. v. Commissioner.
A. R. Purdy Co. v. Commissioner
Docket No. 2763.
United States Tax Court
1944 Tax Ct. Memo LEXIS 85; 3 T.C.M. (CCH) 1059; T.C.M. (RIA) 44329; October 10, 1944
*85 David P. Brown, Jr., Esq., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. STERNHAGEN The Commissioner determined deficiencies of $811.61 in income tax and $491.30 in declared value excess profits tax for the year ended April 30, 1941. The petitioner assails the determination that the transfer to two shareholders of 252 treasury shares in payment of indebtedness resulted in taxable gain. Findings of Fact The petitioner, a New York corporation, is a steel jobber. Its tax returns were filed in the Second District of New York. The petitioner's authorized capital consisted of 2,000 shares, $100 par value, of which 1,500 shares were outstanding and owned by Arthur R. Purdy at the time of his death on November 8, 1932. The Purco Steel Corporation was a corporation all of the outstanding 100 shares of which were owned by Arthur R. Purdy. At the time of his death, Arthur R. Purdy was indebted to petitioner in the amount of $67,980.10. Pursuant to a written agreement dated December 28, 1935, between the executor of the estate and petitioner providing for the liquidation of such indebtedness, the executor transferred to petitioner 100 shares of Purco at an agreed *86 value of $15,212.25 and 620 shares of petitioner at an agreed value of $52,842.60 ($85.23 a share), and petitioner paid the estate $74.75 cash. This transaction was reflected in part on petitioner's books of account by a charge of $52,842.60 to "investment" and a credit to capital surplus of $9,157.40, being the difference between the agreed value and par of the 620 shares. The 100 Purco shares were cancelled and its assets were taken over by petitioner subject to its liabilities, including real estate in New York City conveyed to petitioner by Purco subject to a $20,000 mortgage held by the Purdy estate. The 620 shares were held by petitioner as treasury shares. On August 21, 1938, petitioner was indebted to the Purdy estate for $27,000 for loans made from March 23, 1936, to August 18, 1938. On October 21, 1938, petitioner transferred to the estate 117 of the 620 treasury shares at an agreed value of $9,971.91 ($85.23 each), and $28.09 cash in satisfaction of $10,000 of its indebtedness. The difference of $1,728.09 between par value and agreed value of the 117 shares was charged to capital surplus account, leaving a credit balance of $7,429.31. In the balance sheet of May 1, 1940, *87 the remaining 503 shares acquired December 28, 1935, are shown at par as an asset, its capital stock was stated to be $150,000 and capital surplus at $7,429.31. On October 22, 1940, petitioner was still indebted to the Purdy estate for $17,000 and was also indebted for loans of $8,200 to Ethel B. Purdy, the widow of Arthur R. Purdy, who, since November 23, 1932, has been president and director of petitioner. On that date, petitioner, in satisfaction of these debts, transferred 170 treasury shares to the Purdy estate and 82 treasury shares to Ethel B. Purdy at an agreed value of $100 per share. The moneys borrowed from the Purdy estate and Ethel B. Purdy were required for current financing, particularly of inventory of steel. Because of petitioner's low earning record, poor financial statements and lack of collateral, no attempt was made to borrow from banks. The only other money borrowed by petitioner after Arthur R. Purdy's death and prior to October 22, 1940, was $3,000 borrowed on an insurance policy on the life of Ethel B. Purdy. Memorandum Opinion STERNHAGEN, Judge: The petitioner contends that its disposition in the fiscal year 1941 of 252 shares of its treasury stock did *88 not result in the realization of gain, as the Commissioner determined. It contends that it did not deal in its own shares as it might in the shares of another corporation, and that the real nature of the transaction ascertainable from all the facts and circumstances was a readjustment of its capital and not a realization of gain. The effect of transactions by a corporation involving its own shares held in the treasury has in various aspects been considered in many cases, but in the present state of the law there is little room for debate as to the recognition of gain in a case like the one at bar. See ; ; Mertens Law of Federal Income Taxation, Vol. I, § 5.11. No readjustment of the corporation's capital structure had been intended or was consummated. The acquisition of the Arthur R. Purdy shares in 1935 was not primarily for the purpose of acquiring the shares but to enable the Purdy estate to liquidate the decedent's indebtedness to the corporation. For this purpose the 620 shares were acquired at a cost of $85.23 a share. This *89 was the agreed valuation and it is not in dispute. When acquired in this manner the shares were recognized and treated by the corporation as any other property of such value would have been and thereafter were held as treasury shares and as an asset. While the shares were in the treasury, the corporation, for current operations, borrowed money from the Purdy estate and from Mrs. Purdy, and the amount of these two indebtednesses remaining in 1941 was $25,200. The corporation discharged these two debts by transferring to the creditors respectively 170 and 82 of the treasury shares, which had an undisputed value of $100 each. Thus the corporation having received the $25,200, which it had borrowed, was now enabled to retain that amount of money as a free asset in exchange for treasury shares which it had acquired for $21,477.96. The result was a clear gain of $3,722.04, as the Commissioner determined. The petitioner's argument that it adopted this course in order to avoid the cumbersome process of changing its charter capital or issuing unissued shares is not controlling, for the tax consequences result from what was actually done rather than what might otherwise have been done to achieve *90 the same result. ; . Nor is the conclusion affected by the fact that the shares were acquired by the petitioner in 1935 as a means of enabling the Purdy estate to discharge its debt and still hold a sufficient number of petitioner's shares to retain control, and not for the purpose or with the expectation of resale at a profit. We think it clear that within the meaning of the effective regulation (Regulations 103, Sec. 19.22(a)-16) the corporation dealt with its own treasury shares as it might have dealt in shares of another corporation, and that the real nature of the 1941 transaction was a discharge of its indebtedness for less than the amount borrowed with a resulting gain. Other issues have been settled. Decision will be entered under Rule 50.